[Cite as *State v. McCarty*, 2020-Ohio-3743.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MIAMI COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2019-CA-16 |
| | : | |
| v. | : | Trial Court Case No. 2019-CR-51 |
| | : | |
| MICHAEL S. MCCARTY | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 25th day of August, 2020.

. . . . . . . . . . .

PAUL M. WATKINS, Atty. Reg. No. 0090868, Miami County Prosecutor's Office, Safety Building, 201 West Main Street, Troy, Ohio 45373
        Attorney for Plaintiff-Appellee

CHARLES W. SLICER III, 426 Patterson Road, Dayton, Ohio 45419
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Michael S. McCarty appeals from his conviction following a jury trial on one count of operating a vehicle while under the influence of alcohol (OVI), a third-degree felony violation of R.C. 4511.19(A)(1).

{¶ 2} In his sole assignment of error, McCarty challenges the legal sufficiency and manifest weight of the evidence to sustain his conviction.

{¶ 3} The record reflects that McCarty was arrested in a Rally's restaurant parking lot on January 27, 2019 after being reported for possible drunk driving. The State's first witness at trial was Brooks Scott. He testified that he saw McCarty's car fish-tailing and sliding on the road before going "up into a curb" in the Rally's parking lot. Scott and his girlfriend, Lindsey Smith, also heard McCarty yelling at the Rally's drive-through loud speaker. (Trial Tr. Vol. I at 131, 133.)

{¶ 4} On cross-examination, Scott admitted not knowing whether McCarty's fish-tailing was attributable to snow that was on the road. (*Id.* at 139.) He agreed it was equally possible McCarty's driving trouble was due to the weather conditions as opposed to drunk driving. (*Id.* at 143.) Scott testified that his girlfriend wanted to call 911 based on McCarty's driving and the yelling they heard coming from McCarty's car while they were in the other drive-through lane. (*Id.* at 140.) Scott's girlfriend proceeded to make the 911 call and then handed him the phone. (*Id.* at 143.) After making the call to report possible drunk driving, Scott and Smith left Rally's with their food. They promptly returned, however, and got McCarty's license plate number at the request of the 911 dispatcher. (*Id.* at 134.) When they did so, McCarty's car remained at the drive through speaker. (*Id.*)

{¶ 5} The next witness was Susan Luttrell, the store manager at Rally's. She

testified that McCarty came through the drive through and was intoxicated. According to Luttrell, she heard him slurring his words and yelling in the speaker. She heard him say, "I'm drunk, can you please help me read the menu?" (*Id*. at 149.) Luttrell testified that when McCarty got to the window, "he was very intoxicated," "could hardly talk," and "could not function at all." (*Id*.) Luttrell recalled that McCarty was the driver and sole occupant of his vehicle. (*Id*.) After McCarty paid for his food, Luttrell directed him to pull around into the parking area to wait. As he did so, McCarty almost hit the curb and almost hit Luttrell's own car. (*Id*. at 150.) He also parked "[u]p over the curb." (*Id*.)

{¶ 6} On cross-examination, Luttrell conceded that communication problems sometimes occur when ordering food using the loud speaker even when customers are not intoxicated. She also acknowledged that she was able to understand McCarty's order and that he was able to pay without difficulty. She agreed that the drive through lane was narrow and that the "curb" area she had referenced was flat in the location where McCarty parked. (*Id*. at 155-156.) Finally, Luttrell admitted that her written police statement did not mention McCarty telling her he was too drunk to read the menu. (*Id*. at 158.) On redirect examination, Luttrell noted that her police statement did mention McCarty being too drunk to read the menu although it did not say he had told her so. (*Id*. at 160.)

{¶ 7} Piqua police officer Paula Craft also testified as a prosecution witness. She stated that she was dispatched to the Rally's restaurant at around 1:29 a.m. on January 27, 2019. She parked behind McCarty's vehicle, the front end of which was parked up on the sidewalk. (Trial Tr. Vol. II at 7-8.) Craft approached the driver's side of the vehicle and made contact with McCarty, who was sitting in the driver's seat. She noticed a "strong odor" of alcohol. (*Id*. at 9.) McCarty denied drinking any alcohol and denied driving despite

being alone in the vehicle, which was running with the lights on. (*Id.* at 7, 10-11.) Craft noticed that McCarty's speech was "very slurred." (*Id.* at 10.) After McCarty refused to perform any field-sobriety tests, Craft placed him under arrest for OVI and called for backup. (*Id.* at 13.) When asked the basis for the arrest, Craft responded: "The 911 call. He almost hit the building. The way he was parked. Obviously the vehicle matched; the license plate matched. I had the strong odor of alcohol that—alcoholic beverage. I had the slurred speech and the very slow speaking." (*Id.*) At the police station, McCarty stumbled and had to catch himself. He also fell asleep while being processed and later had to steady himself with a wall. (*Id.* at 15, 18-19.)

{¶ 8} On cross-examination, defense counsel asked whether Craft was aware of McCarty having a speech impediment. Craft responded that she did not recall being aware of him having one. (*Id.* at 29.) Craft also acknowledged marking a form indicating that McCarty's speech was "mush mouthed," "thick tongued," "mumbled," and "slurred." She agreed that those descriptions were all about the same. (*Id.* at 30.) She also agreed that McCarty seemed to understand her and did not appear confused. (*Id.* at 31.) In addition, Craft agreed that McCarty refused a breath test at the police station and refused to sign a *Miranda* waiver after being advised of his rights. (*Id.* at 34-35.)

{¶ 9} The only other witness at trial was Lieutenant Jerry Fogt of the Piqua Police Department. He testified that he arrived on the scene to assist Craft, who was in the process of arresting McCarty. Fogt stated that he detected a "strong odor" of alcohol on McCarty. He also noticed slurred speech, poor balance, and an inability by McCarty to complete thoughts. (*Id.* at 166.) Fogt testified that at one point he told McCarty, "You were drunk in a car." Fogt stated that McCarty responded, "Yes I was[.]" (*Id.*)

{¶ 10} On cross-examination, Fogt acknowledged that McCarty was handcuffed behind his back, precluding him from using his hands to assist with balance. Fogt also expressed no awareness of McCarty having a speech impediment. (*Id.* at 171-173.) As for McCarty's statement about being drunk, Fogt clarified that McCarty first asked why he was being arrested. Fogt responded that it was because McCarty was drunk in a car. According to Fogt, McCarty then said, "yeah," without expressly stating that he was drunk. Fogt interpreted the "yeah" to be an admission by McCarty that he was drunk because McCarty's full statement to Fogt was, "Yeah, I was trying to get a ride." (*Id.* at 173-174.)

{¶ 11} Based on the evidence presented, the jury found McCarty guilty of third-degree felony OVI based on his prior OVI record. The trial court imposed a prison sentence consistent with the law. This appeal followed.

{¶ 12} As set forth above, McCarty's two assignments of error challenge the legal sufficiency and manifest weight of the evidence to sustain his conviction. He argues that Brooks Smith was not credible and questions why Smith testified instead of Smith's girlfriend, who initiated the 911 call. McCarty also notes Smith's testimony that the fish-tailing driving he observed may have been caused by the snowy roads. McCarty contends there was no evidence of his intoxication prior to officer Craft's interaction with him. He further asserts that the vehicle Craft approached (his vehicle) may not have been the same one Smith observed. McCarty argues that Luttrell's trial testimony included facts her police report did not mention. He additionally asserts that on cross-examination Lieutenant Fogt "recanted" his testimony about McCarty admitting being drunk. Finally, McCarty devotes much of his appellate brief to arguing that Craft lacked probable cause to arrest him for OVI.

{¶ 13} When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on an element of the offense to sustain the verdict as a matter of law. *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist.2000). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 14} Our analysis is different when reviewing a manifest-weight argument. When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 15} With the foregoing standards in mind, we conclude that McCarty's conviction was based on legally sufficient evidence and was not against the weight of the evidence. In addition to Brooks Scott's testimony about seeing McCarty fish-tailing and

hearing him yelling in his car, Rally's manager Luttrell testified that McCarty was slurring his words and yelling into the loud speaker. Based on her interaction with him, she believed he was "very intoxicated." She also testified that he admitted being drunk and asked for help. She stated that he was the driver and sole occupant of his vehicle. Officer Craft testified that she saw the front end of McCarty's car parked on the sidewalk. When she approached him, she detected a "strong odor" of alcohol. According to Craft, McCarty's speech was "very slurred." She also testified that his license plate matched the one reported to the dispatcher. McCarty subsequently stumbled, had to steady himself, and fell asleep at the police station. Lieutenant Fogt detected a "strong odor" of alcohol on McCarty. In addition, he noticed McCarty's slurred speech, poor balance, and inability to complete thoughts.  When Fogt told McCarty that he was being arrested for being drunk in a car, McCarty responded, "Yeah, I was trying to get a ride."

{¶ 16} The foregoing testimony, if believed, would convince the average mind of McCarty's guilt on the OVI charge beyond a reasonable doubt. Viewing the evidence in a light most favorable to the prosecution, rational jurors could readily have found the essential elements of the crime proven beyond a reasonable doubt. With regard to the manifest weight of the evidence, the evidence strongly supported McCarty's conviction. Although we are entitled to assess witness credibility in a manifest-weight review, we extend substantial deference to the fact-finder's determinations of credibility and which testimony to believe. *State v. Stanaford*, 2d Dist. Montgomery No. 27940, 2019-Ohio-1377, ¶ 32. Here multiple witnesses observed and testified about various indicia of intoxication displayed by McCarty. In addition, Luttrell testified that McCarty admitted being drunk and needing help, and Lieutenant Fogt testified about McCarty making what

reasonably could be construed as an implicit admission of intoxication. This is not an exceptional case in which the evidence weighed heavily against conviction.

{¶ 17} Finally, insofar as McCarty questions whether officer Craft lawfully seized and arrested him, we note that he did not file a pretrial suppression motion challenging the constitutionality of her actions. We decline to address an attempt to weave a suppression issue into assignments of error challenging the legal sufficiency and manifest weight of the evidence to sustain his conviction when the underlying issues were not raised in the trial court.

{¶ 18} McCarty's assignments of error are overruled, and the judgment of the Miami County Common Pleas Court is affirmed.

. . . . . . . . . . . .

FROELICH, J. and WELBAUM, J., concur.

Copies sent to:

Paul M. Watkins
Charles W. Slicer III
Hon. Jeannine N. Pratt